IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT SULLIVAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-13-3129 |
| FRANK B. BISHOP, JR., *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM

Plaintiff Robert Sullivan, a Maryland inmate, filed this complaint pursuant to the Civil Rights Act, 42 U.S.C. § 1932, after he was assaulted by a fellow inmate. Sullivan alleges violations of the Eighth Amendment in Defendants' failure to protect him from stabbing and violations of the Due Process Clause of the Fourteenth Amendment for his administrative conviction and sentence for the assault. Defendants filed a timely motion to dismiss or, in the alternative, for summary judgment, ECF No. 13. Although Sullivan was advised of his right to file a response to Defendants' motion and of the consequences for failing to do so, ECF No. 14, he has not opposed the motion. A hearing in this matter is unnecessary because the issues are presented adequately in the filings. *See* Loc. R. 105.6 (D. Md. 2014).[1] Construing Defendants' motion as a motion for summary judgment, and finding no genuine dispute of material fact, I will enter judgment for the Defendants.[2]

---

[1] In resolving this motion, I have reviewed carefully the Complaint, ECF No. 1, and Defendants' Motion, ECF No. 13, supporting memorandum, ECF No. 13-1, and accompanying exhibits, ECF Nos. 13-2 – 13-20.

[2] *See* Fed. R. Civ. Proc. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

I.  BACKGROUND

   A. Plaintiff's Allegations

Sullivan is a prisoner incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland, where he arrived on April 16, 2012. Compl. ¶¶ 3, 7. Upon his arrival, he alleges that Warden Bishop and Security Chief Thomas ordered him placed on segregation. *Id.* ¶ 8. On September 29, 2012, Sullivan states he was released from "punitive" segregation and placed in general population. *Id.* ¶ 10. He was let out of his cell for a shower and, shortly after entering the shower area, Sullivan states he was stabbed repeatedly by an unknown assailant. *Id.* ¶¶ 11–12. When Sullivan screamed for help, the assigned officer, Officer Baumgardner, allegedly was not at his post to respond. *Id.* ¶ 11. Sullivan was stabbed thirteen times, causing pneumothorax.[3] *Id.* ¶ 12. Sullivan states that he was sent to the emergency room on October 28, 2012, and remained at Western Maryland Regional Medical Center for four days. *Id.* ¶ 13. Sullivan claims that staff assigned to Housing Unit #5 are never at their assigned posts. *Id.* ¶ 15.

Sullivan was charged with violating Institutional Rules 102 and 105. *Id.* ¶ 17. Rule 102 proscribes assault or battery on another inmate, and Rule 105 proscribes possession of a weapon. Defs.' Mem. 2. On November 30, 2012, Sullivan was given a disciplinary hearing before Hearing Officer Sandstrom, with Officers Slate and Loudon appearing as institutional representatives, where he was convicted of both violations. Compl. ¶ 17. He was sentenced to 365 days in segregation and loss of 250 days of good conduct credit. *Id.* ¶ 17. Sullivan alleges that Sandstrom, Slate, and Loudon knew at the time of his hearing that inmate Michael Kirby made statements under oath at another inmate's disciplinary hearing that Kirby was the assailant

---

[3] Pneumothorax is "a condition in which air or other gas [are] present in the pleural cavity." Merriam-Webster, www.merriam-webster.com/dictionary/pneumothorax. It can occur as a result of "puncture of the chest wall." *Id.*

2

who stabbed Sullivan and inmate Aaron Hatt in the shower. *Id.* ¶¶ 18–19. In Sullivan's opinion, the omission of these statements constitutes deliberate withholding of exculpatory evidence. *See id.* ¶ 19. In addition to these omissions, Sullivan alleges that Baumgardner and Shockey filed inconsistent statements under oath. *Id.* ¶ 14.

### B. Defendants' Allegations

Defendants[4] do not dispute that Sullivan was stabbed by another inmate in the shower of his housing unit and that he suffered pneumothorax as a result and required hospitalization. Defs.' Mem. 6–7. Officer Baumgardner was the first to respond to the scene of Sullivan's assault; he was observing inmate movement from the control center located in the housing unit where Sullivan was assigned. Baumgardner Decl. ¶ 4, Defs.' Mot. Ex. 2, ECF No. 13-4; *see* Serious Incident Report ("SIR") 4, Defs.' Mot. Ex. 6, ECF No. 13-8. He declares that he saw inmate Aaron Hatt run from the shower into cell 5-A-28 with what appeared to be blood on his face and hands. Baumgardner Decl. ¶ 4. When Baumgardner responded to cell 5-A-28, he saw Hatt attempting to wash blood from his person and found three homemade weapons in Hatt's possession. *Id.* After handcuffing Hatt, Baumgardner saw Sullivan walking from the shower with blood on his head, chest, and back. *Id.* Baumgardner states that he saw no other inmate enter or leave the shower area and that Sullivan and Hatt were escorted to the medical unit without further incident. *Id.*

Defendant Officer Shockey supports Baumgardner's version of events and declares that he observed Baumgardner handcuffing Hatt and observed Sullivan exiting the shower area bleeding from the head, chest, and back area. Shockey Decl. ¶ 4, Defs.' Mot. Ex. 4, ECF No. 13-6. Shockey secured the three weapons that were found in Hatt's possession, handcuffed

---

[4] Service on Hearing Officer John Sandstrom was never completed; however, for the reasons explained below, the claims against him shall be dismissed.

Sullivan, and escorted Sullivan to the medical room for attention to his wounds. *Id.* Baumgardner and Shockey state that prior to this incident, Sullivan and Hatt were not documented as enemies, nor was there any indication that they presented a danger to one another. *Id.* ¶ 5; Baumgardner Decl. ¶ 5. Following the incident, however, Sullivan and Hatt were placed on each other's enemies lists and were housed in different prisons. *Id.*

Defendant Lieutenant Phillip Natale, the Housing Unit #5 Manager, explains that post orders for general population housing require housing unit officers to conduct security rounds of inmate living areas at least every half hour and to document the rounds in the post logbook. Natale Decl. ¶ 6, Defs.' Mot. Ex. 5, ECF No. 13-7. He further states that Baumgardner fulfilled his post duties as required and responded appropriately and in a timely manner to the altercation between Sullivan and Hatt. *Id.* He explains that the cell into which Hatt ran was co-occupied by two inmates, Michael Kirby and Calvin Lockner, who were placed on administrative segregation pending investigation. SIR 2, 4, 7. During an investigation into the incident by the Internal Investigation Unit ("IIU"), Hatt refused to give a statement. *Id.* at 10. As to Sullivan, IIU Detective/Sergeant Wills stated that Sullivan was "not cooperative and refused to make any statement regarding his altercation with Inmate Hatt" and that Sullivan requested in writing "that no further investigative action be taken." IIU File 7, Defs.' Mot. Ex. 14, ECF No. 13-16. Sullivan's written request, dated October 28, 2012, is included as an exhibit. *See id.* at 12. However, Defendants also include a November 7, 2012 statement written by Sullivan, which mirrors the allegations in his complaint. SIR 11. It is unclear what effect this later statement had on the IIU investigation, which was closed at Sullivan's request ten days earlier. However, this disputed fact is not material to the rulings explained below.

4

Defendants Slate and Logsdon, who were the officers present at Hatt and Sullivan's adjustment hearings, confirm that Kirby, during Hatt's hearing, admitted he was the assailant, but did not testify at Sullivan's hearing. Slate Decl. ¶ 3, Defs.' Mot. Ex. 9, ECF No. 13-11; Logsdon Decl. ¶ 3; Defs.' Mot. Ex. 10, ECF No. 13-12. Defendants refute Sullivan's allegation that they withheld exculpatory evidence by arguing that "it was ultimately the adjustment hearing officer's decision to weigh the credibility of his testimony." Defs.' Mem. 8 (citing Slate Decl. ¶ 3; Logsdon Decl. ¶ 3). Kirby testified that he assaulted Hatt and that the reason Hatt ran into his cell was so that Kirby could "patch him up a little bit." Hatt's Admin. Rec. 11–12, Defs.' Mot. Ex. 11, ECF No. 13-13. Kirby further testified that the weapons found in the cell where Hatt was washing off the blood from his wounds actually belonged to Kirby, not Hatt. *Id.* In rejecting Kirby's testimony, Sandstrom noted that the reporting officer saw only two inmates in the shower area, Sullivan and Hatt, and that neither was identified as Kirby. *Id.* Sandstrom also noted that Hatt's behavior of running into a cell to wash off the blood from an attack is not the behavior of a victim of an assault; rather, it was more likely that Hatt was a combatant in a fight and was attempting to cover-up his role in the fight. *Id.* For these reasons, Sandstrom rejected Kirby's testimony as "wholly not persuasive and not credible." *Id.*

At Sullivan's adjustment hearing, Sullivan testified that he was stabbed as he bent over to remove his shoes and that he suspected there was a third person present in the shower. Sullivan's Admin. Rec. 11, Defs.' Mot. Ex. 13, ECF No. 13-15. Because Sullivan provided no evidence to bolster his claim that a third person acted as an assailant and provided only a very brief defense, Sandstrom did not find his testimony credible. *Id.* at 11–12. Based on Hatt's injuries and the evidence that there were only two inmates in the shower, Sandstrom concluded that Sullivan was a combatant in a fight, not merely a victim as he claimed. *See id.* There is no

indication that Sandstrom, who heard Kirby testify at Hatt's hearing just 75 minutes earlier, considered this testimony during Sullivan's hearing. *Compare id.* at 10 ("Date of Appearance: 11/30/2012 11:40:00 AM"), *with* Hatt's Admin. Rec. 10 ("Date of Appearance: 11/30/2012 10:25:00 AM").

Both Sullivan and Hatt received 365 days of disciplinary segregation, loss of 250 days of good conduct credit, and mandatory indefinite suspension of visits with an eligibility date for reinstatement of May 30, 2014. *See* Sullivan's Admin. Rec. 1; Hatt's Admin. Rec. 1. Both inmates' adjustment histories were rated as poor. Sullivan's Admin. Rec. 12; Hatt's Admin. Rec. 12. Additionally, it was noted by IIU in its report that Sullivan is a "validated member" of the Security Threat Group ("STG") known as Dead Man Inc. ("DMI") and that Hatt is a "validated member of an unspecified security threat group." IIU File 7, 21–22.

After Sullivan's conviction before Sandstrom, Sullivan appealed to Warden Bishop, who affirmed Sandstrom's decision, noting to Sullivan that "from my perspective this incident is a result of your on-going STG activities. I concur with [Sandstrom's] decision." Sullivan Admin. Rec. 6. Sullivan appealed this conviction to the Inmate Grievance Office ("IGO"). Oakley Decl. ¶ 3, Defs.' Mot. Ex. 17, ECF No. 13-19. It was referred to the Office of Administrative Hearings ("OAH") for a hearing before Administrative Law Judge ("ALJ") Georgia Brady. *Id.* The appeal was denied and dismissed as being "without merit" in an opinion dated September 16, 2013. *Id.* There is no evidence that Sullivan filed an appeal for judicial review of the ALJ's decision with the appropriate state circuit court. *Id.* Additionally, there is no record of Sullivan seeking any administrative remedies concerning the assault. *See* Beeman Decl. ¶ 3, Defs.' Mot. Ex. 15, ECF No. 13-17 (noting that the attached records comprise the entirety of the

Administrative Remedy Process ("ARP") forms submitted by Sullivan); ARP Index Report 1, Defs.' Mot. Ex. 16, ECF No. 13-18 (reflecting no ARPs submitted regarding an assault).[5]

## II. STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999,) *aff'd*, 213 F.3d 632 (4th Cir. 2000). The substantive law governing the case determines what is material. *See Hoovan-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant, in light of the governing law, is not material. *Id.*; *see* Fed. R. Evid. 401 (defining relevance).

If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). When the nonmoving party does not oppose a summary judgment motion, "those facts established by the motion" are "uncontroverted." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410,

---

[5] Presumably, the ARP Index Report contains the "attached records" referred to in Beeman's Declaration, Beeman Decl. ¶ 4, and should have been filed as an exhibit to Beeman's Declaration rather than as a separate exhibit to Defendants' Motion.

416 (4th Cir. 1993). Nonetheless, the moving party still must demonstrate that, based on those facts, that party is entitled to judgment as a matter of law, because "[t]he failure to respond to the motion does not automatically accomplish this." *Id.*

## III. DISCUSSION

### A. Eighth Amendment Claim: Failure to Protect from Violence

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Sullivan must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (citations omitted). Nonetheless, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. This means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997).

Before reaching the merits of Sullivan's Eighth Amendment claim, Defendants assert that Sullivan did not exhaust his administrative remedies. Defs.' Mem. 20–22. Although Sullivan did not respond, he alleges in his complaint that the administrative remedies process ceased to apply once the IIU investigation began. Compl. 3. When granted a liberal construction, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), Sullivan appears to argue that the IIU investigation

constituted adequate exhaustion, even though the formal administrative remedy process was not completed.

The Prisoner Litigation Reform Act provides, in pertinent part:

(a) Applicability of administrative remedies

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); see § 1997e(e). As a prisoner, Sullivan is subject to the strict requirements of the exhaustion provisions. It is of no consequence for the purposes of exhaustion that Sullivan is aggrieved by a single occurrence of alleged misconduct, as opposed to general unconstitutional conditions of confinement. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is required even when the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Maryland law establishes the grievance process that must be exhausted prior to judicial review. *See* Md. Code Ann., Corr. Servs. § 10-210(a). It requires that "an individual confined in a correctional facility" who has "a grievance against an official or employee of the Division of Correction . . . submit a complaint to the [Inmate Grievance] Office within the time and in the manner required by regulations adopted by the Office." Corr. Servs. § 10-203(a). Although Sullivan submitted a request to review Sandstrom's sentence to the IGO, he does not allege that he submitted any grievance to the prison or the IGO regarding his failure to protect claim. Instead, the uncontroverted evidence, *see Custer*, 12 F.3d at 416, shows that no administrative

grievance regarding the assault was submitted to the prison, *see* Beeman Decl. ¶ 3; ARP Index Report 1, or to the IGO, *see* Oakley Decl. ¶ 3 (declaring that Sullivan has submitted only one grievance to the IGO, which concerned an appeal to the sentence imposed by Sandstrom). Accordingly, Sullivan failed to exhaust administrative remedies as to his Eighth Amendment claim, and Defendants are entitled to summary judgment on that claim. *Jones*, 549 U.S. at 220.

### B. Due Process Claim: Conviction and Sentence

Sullivan's second claim alleges that Defendants violated the Due Process Clause when they allegedly withheld exculpatory evidence (i.e., Kirby's admission during Hatt's hearing to being the assailant). *See* Compl. ¶¶ 26–29. In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits, he is entitled to certain due process protections. *Wolff v. McDonnell*, 418 U.S. 539 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id.* at 564–71. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). And, the mere fact that a Department of Corrections rule governing adjustment hearings was violated does not necessarily establish a due process violation. *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1456 (4th Cir. 1990) ("[A] state does not necessarily violate the constitution every time it violates one of its rules."); *Ewell v. Murray*, 813 F. Supp. 1180, 1183 (W.D. Va. 1995) ("Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due.").

The Fourth Circuit has ruled there is no "*Brady*-style right to exculpatory evidence" in prisoner adjustment hearings. *Wise v. Carpenter*, 838 F.2d 469, 1998 WL 4574, at *3 (4th Cir. Jan. 19, 1988) (unpublished). Defendants acknowledge a circuit split on this question. *Compare*

*id.*; *Kenney v. Barron*, 239 F. App'x 494 (11th Cir. 2007) ("[W]e have never held principles of *Brady* extend to prison disciplinary hearing analyzing due process claims under *Wolff*"); *Godlock v. Fatkin*, 84 F. App'x 24, 3 (10th Cir. 2003) (same), *with Wise*, 1998 WL 4574, at *4 (Sprouse, J., concurring in part and dissenting in part) (agreeing with the majority that *Brady* does not apply, but opining that the prison had "no legitimate penological justification" for withholding exculpatory evidence); *Young v. Kann*, 926 F.2d 1396, 1403 (3d Cir. 1991) (holding that due process was violated where a prisoner was denied access to exculpatory witness statements); *Chavis v. Rowe*, 643 F.2d 1281, 1286 (7th Cir.), *cert. denied sub nom. Boles v. Chavis*, 454 U.S. 907 (1981) (same). Following the only binding precedent on point, I find that due process does not require that *Brady*-type evidence be voluntarily provided to a prisoner in an adjustment hearing. *See Wise*, 1998 WL 4574, at *3; *see also Ray v. Caraway*, No. JFM-12-286, 2012 WL 3156832, at *5 (D. Md. Aug. 2, 2012) (mem.) (applying *Wise* to hold that a prisoner is not entitled to *Brady*-type material in disciplinary proceedings). Here, as in *Wise*, Defendants have advanced "no legitimate penological justification" for their decision not to make Sullivan aware of Kirby's prior testimony. *See Wise*, 1998 WL 4574, at *4 (Sprouse, J., concurring in part and dissenting in part). But, the *Wise* court did not find such a failure material and did not require the advancement of a specific penological justification. *See id.* at *3. Accordingly, Defendants did not violate Sullivan's due process rights and, therefore, are entitled to judgment in their favor. *See id.*

It does not appear that Sullivan challenges Sandstrom's ultimate finding, but rather Defendants' failure to provide exculpatory evidence, as explained above. However, to the extent Sullivan does challenge the ultimate finding, it is clear that Sullivan's adjustment conviction was based on "some evidence." *Hill*, 472 U.S. at 455. Federal courts do not review the correctness

11

of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990). Sullivan was observed as one of two inmates entering the shower area and leaving with stab wounds; his assertion that he and Hatt were simply victims of an assault by a third inmate was considered and rejected by Sandstrom. Sullivan's Admin. Rec. 11–12. Sullivan's narrative was inconsistent with the additional evidence presented, and there was adequate evidence to support Sullivan's conviction. Accordingly, Defendants are entitled to summary judgment on Sullivan's due process claims.

## IV. CONCLUSION

The uncontroverted evidence establishes that Sullivan failed to exhaust his administrative remedies regarding his Eighth Amendment claim and that he has not established a violation of his due process rights. Therefore, Defendants are entitled to summary judgment and Defendant John Sandstrom is entitled to dismissal of the claims against him without further effort to secure service of the complaint as to him. A separate order follows.

Dated: August 18, 2014

/S/ 08/18/14
Paul W. Grimm
United States District Judge